THE MERIDEN BRITANNIA Co., Respondent, *v.* GODFREY N. ZINGSEN, Appellant.

A parol promise to assume an antecedent debt of a third person, upon consideration that the creditor will cancel and extinguish the debt and release the debtor, which is done, is not within the statute of frauds, and is valid.

Two instruments, executed at the same time, and relating to the same subject-matter, must be construed together as if one instrument.

Where it appears, by the terms of an agreement or the nature of the case, that the performance of one party was to precede that of the other, an action can be maintained against him who was to do the first act, although nothing has been done or offered by the other.

(Argued September 25, 1871; decided January term, 1872.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment entered upon the report of referee in favor of the plaintiff.

This action is brought to recover a balance claimed to be due upon a contract by which defendant assumed to pay the debt of a third person.

The defence is, that the agreement is void under the statute of frauds, found among other things as follows :

On the 31st day of January, 1861, one L. H. Mattison was indebted to the plaintiff in the sum of $1,580.07, which indebtedness the said Mattison was unable to pay.

A verbal agreement was made between said Mattison and the defendant, Godfrey N. Zingsen, that if Zingsen would settle said debt with plaintiff, so that Mattison could be released, Mattison would pay said Zingsen the amount thereof as follows, viz.: $1,000 in cash, and the balance in notes without indorsement.

An agreement was thereupon made in writing between said plaintiff and said defendant as follows, viz. :

"NEW YORK, *January* 31, 1861.

"I agree to furnish to the Meriden Manufacturing Company an assortment of plated forks and spoons per L. H. Mattison's price list, at 70 per cent discount, to settle claim against L. H. Mattison, to be delivered in months of February and March.   Oval tip'd and Olive not to be ordered.

"The plain and tip'd goods not to exceed ¼ of the amount. The spoons and forks to be silver plated like sample shown.
    "(Signed.)                    G. N. ZINGSEN."

"This is to certify that we agree to give our claim against L. H. Mattison up to G. N. Zingsen as soon as he has delivered to us the amount at 70 per cent discount, in spoons and forks as per his agreement.
                    "Meriden Britannia Company,
    "(Signed.)              H. C. WILCOX."

H. C. Wilcox was the agent of the company. The said written instruments were made and delivered at one and the same time.

About the same date, Mattison, according to his agreement with defendant, paid him $1,000, and gave to him notes, payable at various dates, amounting in the aggregate to $594.50.

On or about the same date the plaintiff released Mattison from the said claim against him. Defendant had delivered to the plaintiff, pursuant to the agreement, plated ware to the amount of $1,225.19; and a balance amounting to $354.88 remained due to the plaintiff, for which sum, with interest, the referee ordered judgment in favor of the plaintiff.

*C. Bainbridge Smith* for the appellant. The agreement was void under the statute of frauds. (2 R. S., p. 135, § 2 ; *Mallory* v. *Gillett*, 21 N. Y. R., 412 ; *Brewster* v. *Silence*, 8 N. Y. R., 206 ; *Draper* v. *Snow*, 20 id., 331 ; *Hall* v. *Farmer*, 5 Denio, 484 ; S. C., affirmed, 2 N. Y. R., 553 ; *Berly* v. *Rampacher*, 5 Duer, 183 ; *Calkins* v. *Collins*, 3 Barb., 305 ; *Baldwin* v. *Palmer*, 10 N. Y., 232 ; *Kingsley* v. *Balcom*, 4 Barb., 131 ; *Stern* v. *Drinker*, 2 E. D. Smith, 401 ; *Fay* v. *Jones*, 18 Barb., 340 ; *McKnight* v. *Dunlop*, 5 N. Y., 537 ; *Collier* v. *Coates*, 17 Barb., 474.) To entitle plaintiff to recover, it should have been alleged and proven that it had tendered and was ready and willing to transfer the debt to defendant. (*Dunham* v. *Pelter*, 8 N. Y., 508 ; *Lester* v. *Jewett*, 11 N. Y., 453.)

*W. Gleason* for the respondent. The papers executed and delivered at the same time are to be read together and constitute one agreement. (*Van Horne* v. *Crain*, 1 Paige, 455 ; *Rawson* v. *Lapman*, 1 Seld., 461.) The agreement was valid. (*Mallory* v. *Gillett*, 21 N. Y. R., 412 ; *Brewster* v. *Shelton*, 8 John. R., 376.)

EARL, C. There are two theories, upon either of which this judgment can be upheld. We may treat the defend-

ant's agreement as one to pay and discharge the debt of Mattison.

This agreement the defendant claims to be void under the statute of frauds, which provides that "every special promise to answer for the debt, default or miscarriage of another person" shall be void, unless such promise be in writing, expressing the consideration thereof and subscribed by the promisor.

It is not every verbal promise to pay the debt of another that is void within this statute. There are many exceptions, as disclosed by the numerous cases upon the subject.

A promise to pay the debt of a third person is not within the statute, where it is agreed between the parties, the creditor, debtor and promisor, that the debt shall be extinguished and the creditor shall look only to the promisor for payment upon the new promise. In such case no other person remains liable for the debt but the promisor, and his undertaking is not collateral but original to pay his own debt, and not to answer for the debt of another. There is then what is known in the civil law as a delegation, and the creditor, takes a new debtor, who is called the delegated debtor.

In *Anstey* v. *Marden* (4 Bosanquet & Puller, 124), Chief Justice MANSFIELD says that he did not see "how one person could undertake for the debt of another, when the debt for which he was supposed to undertake was discharged by the very bargain." In *Mallory* v. *Gillett* (21 N. Y., 412), Chief Judge COMSTOCK, after a very able review of many cases arising under the statute of frauds, gives a classification of the cases not within the statute, and of such cases are these: "When the original debt becomes extinguished, and the creditor has only the new promise to rely upon; for example, when such new undertaking is accepted as a substitute for the original demand." In Throop on the Statute of Frauds, at pages 318, 322, 370, 374, will be found a very able and discriminating review of the cases upon this subject, and the author lays down these rules: "A promise to assume an antecedent liability of a third person is without the statute, if the third person's liability had become extinct at the time

when that of the promisor came into existence, or if the third person's antecedent liability to the promisee is discharged in consideration of its assumption by the promisor." And, in this case, it was distinctly agreed between the three parties—the creditor, debtor and promissor—that in consideration that the father of the debtor would pay the promisor $1,000 in money, and the debtor give him his own notes for the balance, the promisor would pay the claim of the creditor in plated ware, in the months of February and March thereafter, and the creditor should release the debtor. It was obviously contemplated by the parties that all this should be done at the same time. In pursuance of this agreement the promisor executed the written undertaking to the creditor, and either then or soon after, the creditor released the debtor, and the $1,000 was paid and the debtor's notes given to the promisor, and the notes were subsequently paid. Hence this case is clearly within the rules above stated, and the promise of the defendant is not within the statute of frauds. But if this is not the true theory upon which this case should be disposed of, then there is another theory, equally fatal to the defence of the defendant.

The two instruments dated January 31st, 1861, executed at the same time, relating to the same subject-matter, must be construed together as if they constituted but one instrument; and then, as claimed by the defendant, they show a sale of the plaintiff's demand against Mattison to the defendant in consideration of the plated ware to be delivered to the plaintiff by the defendant. Upon this assumption, the defendant claims that the plaintiff must be defeated, because he has never assigned or offered to assign his demand to the defendant, and has placed it out of his power to do so, as he released Mattison.

According to this construction of the agreement between the parties, the defendant was to deliver the plated ware from time to time during the months of February and March, and as soon as he had delivered the whole of it the plaintiff was to give up to him his demand against Mattison. They

were not dependent agreements. Performance on one part was not a condition precedent to performance on the other. The plaintiff was clearly not bound as a condition precedent to assign the claim before the defendant was bound to deliver the plated ware. He was not bound to assign it until after the defendant had fully performed on his part. Hence, this case is fully within the rule laid down in *Morris* v. *Slite* (1 Denio, 59). In that case the action was in covenant by the vendor for the purchase-money upon a contract for the sale of land. The purchaser was to pay the price of the land in five years from the date, with interest annually, and to pay the taxes on the land, and the vendor covenanted that " after " the purchaser " shall have paid the above sums of principal and interest, at the time and in the manner above specified, and shall have performed the agreement above mentioned," he would sell and convey the land. Chief Justice BRONSON says: " Where it appears, from the terms of the agreement or the nature of the case, that the things to be done were not intended to be concurrent acts, but the performance of one party was to precede that of the other, then he who was to do the first act may be sued, although nothing has been done or offered by the other party. He has not made performance by the other party a condition precedent to his liability, but has trusted to a remedy by action on the agreement.

Here the defendant, after he had performed, could have sued the plaintiff upon his agreement to assign, and could have recovered such damages as he could have proved. And the plaintiff having put it out of his power to assign the claim, the defendant could probably have set up his claim for damages as a counter claim in this action. But what damages has the defendant sustained? What possible good could an assignment do him? The referee has found that Mattison has fully paid to the defendant the whole amount of the claim. And hence, the discharge of the claim by the plaintiff can work no possible harm to the defendant. And the discharge could work no harm, even if Mattison had not paid the defendant, because, before the discharge was executed,

Mattison became obligated to pay the amount directly to the defendant, and that obligation the plaintiff never, in any way, interfered with or discharged.

Hence, upon the whole case I can see no reason to doubt that the judgment below was fully authorized by the facts of the case, and it should be affirmed, with costs.

All concur.

Judgment affirmed.